Law Offices of David C. Beavans, APC
David C. Beavans, Esq. (SBN #259424)
Caitlin V. Steele, Esq. (SBN #283266)
John T. Sylvester, Esq. (SBN #299617)
4542 Ruffner Street, Suite 150
San Diego, California 92111
(619) 234-7848
(619) 234-7849 fax

Attorneys for Class and Named
Plaintiff Christopher J. Reichman

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Christopher J. Reichman, individually and on Behalf of All Others Similarly Situated,**<br><br>Plaintiff;<br><br>vs.<br><br>**Poshmark, Inc., a Delaware Corporation,**<br><br>Defendant. | Case No: **'16CV2359 DMS JLB**<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL<br><br>1) Violation(s) of Telephone Consumer Protection Act of 1991;<br>2) Violation(s) of Cal. Unfair Business Practices Act. |

Plaintiff CHRISTOPHER J. REICHMAN ("Plaintiff"), individually and on behalf of the Class described below, by their attorneys, makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Plaintiffs bring this action for injunctive relief and damages against Defendants, and each of them, demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff Christopher J. Reichman is, and at all times herein mentioned was, a resident of the County of San Diego, State of California, who had and paid for mobile phone and text message service on his phone line, 619-683-7971.

2. Defendant POSHMARK, INC. ("POSHMARK") is, and at all times herein mentioned was, a Delaware corporation, doing business in the County of San Diego, State of California.

3. Defendant POSHMARK is directed from its nerve center and headquarters located in Redwood City, California, in the county of San Mateo. California law will therefore apply to POSHMARK, even if some Class Plaintiffs are not located in State of California.

4. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. section 227 et. seq. The U.S. Supreme Court recently decided that federal courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. sections 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012).

5. Plaintiff alleges on information and belief that at all times herein mentioned any person acting on behalf of POSHMARK was an agent of POSHMARK, expressly directed to do the acts done, whose activities gave the appearance of being expressly directed by POSHMARK, or whose actions were approved by POSHMARK

COMPLAINT

expressly or impliedly after the fact.

## NATURE OF THE ACTION

6.     Plaintiffs bring this class action against POSHMARK, INC. (hereinafter "POSHMARK") for injunctive relief and damages and other relief available at law and in equity on behalf of themselves and members of the following class:

> *All persons and entities located within the United States of America to whose mobile phones POSHMARK and/or its agents transmitted a text message without prior express written consent anytime from September 15, 2012, to the present.*

7.     POSHMARK is an online service with over a million users that facilitates the sale and purchase of used fashionware and clothing by building an online "store" or "closet" for buyers and advertising the commercial availability of these wares to consumers.

8.     POSHMARK's CEO, Manish Chandra, has stated that the online service was designed to be a "mobile-first platform" and that the ease of its use on mobile wireless devices is a major selling point.

9.     The entire POSHMARK service is designed to be used from mobile phones or mobile-phone like devices.

10.    POSHMARK's website/app has new users create an online "closet" for the clothing they wish to sell and upload pictures taken with their mobile phone or device to the "closet" on the website/app.

11.    POSHMARK touts the convenience of being able to set up one's closet and upload pictures of the clothes all from the user's mobile

COMPLAINT

phone, but then is another reason it is mobile phone based.

12. POSHMARK's website/app then asks new user on her mobile phone if she wants to share this information with her friends.

13. If the user indicates "yes," POSHMARK then sends a text message to every number in the Contacts list stored in the mobile phone.

14. The advertisement invites one to view and buy the wares now being sold through POSHMARK and gives a link to the POSHMARK closet of the person whose Contacts list was used.

15. POSHMARK does not obtain the prior express written consent of these people whose numbers are in the Contacts list before sending their advertising message.

16. POSHMARK does not inquire whether their new user has obtain the prior express written consent of these people whose numbers are in the Contacts list before sending their advertising message.

17. The POSHMARK website/app does not clearly and conspicuously inform users that it will send a text message to everyone on the Contacts list in their mobile phone.

18. The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that a sender obtain prior express written consent before transmitting SMS (Short Message Service ) text messages to people's mobile phones.

19. POSHMARK has intentionally violated the TCPA in a so-far successful attempt to grow their mobile phone based business for years.

COMPLAINT

## FACTUAL DETAILS RE NAMED PLAINTIFF

20. Defendant transmitted one (1) text message to Mr. Reichman's wireless mobile phone number (619-683-7971) wherein they tried to sell and advertise the commercial availability of clothing to him on January 25, 2015, at approximately 1:23 p.m.

21. Mr. Reichman uses his cell phone for personal and business use.

22. At some point previous to January 25, 2015, Mr. Reichman's law firm had taken on as a client one Ms. Tricia Tolentino.

23. During the course of that representation, Ms. Tolentino learned Mr. Reichman's wireless mobile phone number and saved it into the contacts of her wireless mobile phone.

24. Long after Ms. Tolentino's case had been resolved, she signed up with POSHMARK to sell some of her old clothing.

25. She followed POSHMARK's directions to set up her online "closet" and upload photos of the clothes she wanted to sell through their for-profit service.

26. POSHMARK's website then asked whether she wanted to share her closet with her friends, and she answered yes.

27. Ms. Tolentino was not informed in any way that answering yes would cause SMS text messages to be sent to every number in the contacts list maintained on her wireless mobile phone.

28. Ms. Tolentino was not informed in any clear conspicuous way

COMPLAINT

that answering yes would cause SMS text messages to be sent to every number in the contacts list maintained on her wireless mobile phone.

29. POSHMARK then sent the text message alleged above to Mr. Reichman's wireless mobile phone number and sent the same to every other contact in Ms. Tolentino's phone.

30. POSHMARK never obtained prior express written consent to send Mr. Reichman an SMS text message to his wireless mobile phone number.

31. Plaintiff alleges, based on information and belief, POSHMARK also sent the same text message alleged above to every number in the contacts list maintained on Ms. Tolentino's wireless mobile phone.

32. POSHMARK never obtained prior express written consent to send any person listed in the contacts on Ms. Tolentino's phone a SMS text message to their wireless mobile phone number.

33. POSHMARK never asked Ms. Tolentino if she had obtained prior express written consent from the persons in her contacts list on her phone in order to have POSHMARK send them SMS text messages.

34. Mr. Reichman called Ms. Tolentino after receiving the SMS text message, and she apologized saying that she did not know POSHMARK was going to spam everyone in her contacts list.

35. Mr. Reichman has been harmed by the junk calls complained of herein by the direct waste of his time during the SMS text message call itself, the indirect waste of time in having to break from other important

COMPLAINT

tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

## CLASS ACTION ALLEGATIONS

36. **Description of the Class**: Plaintiffs bring this statewide class action on behalf of themselves and a Class defined as follows:

> *All persons and entities located within the United States of America to whose mobile phones POSHMARK and/or its agents transmitted a text message without prior express written consent anytime from September 15, 2012, to the present.*

37. Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

38. Plaintiffs reserve the right to modify the Class description and the Class period based on the results of discovery.

39. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiffs believe that the total number of Class members is at least in the tens of thousands, and

members of the Class are numerous and geographically dispersed across California and possibly the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

40. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

a. Whether POSHMARK has a policy of transmitting text messages to numbers on the Contacts lists of its users;

b. Whether POSHMARK obtained prior express written consent from the owners of the mobile phone numbers listed in its users' Contact List before transmitting one or more text messages to them;

c. Whether POSHMARK informs its users that the POSHMARK website/app is going to access their Contacts list and send text messaged to the numbers therein;

d. The extent to which POSHMARK transmitted text messages to the phone numbers in its users' Contacts lists;

e. Whether POSHMARK's practices regarding its text message

advertising are unjust or unreasonable;

f. Whether POSHMARK's practices regarding its text message advertising have caused POSHMARK to be unjustly enriched;

g. Whether POSHMARK has engaged in an unfair, unlawful and/or fraudulent business practice.

41. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by POSHMARK's common course of conduct since POSHMARK sent them unauthorized text message advertisements.

42. Plaintiffs seek statutory damages. Inquiry into personal damages is therefore irrelevant.

43. **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with experience in handling complex litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

44. **Superiority of a Class Action**: Plaintiffs and the members of the Class suffered, and will continue to suffer, harm as a result of POSHMARK's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is

COMPLAINT

impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by POSHMARK's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice.

45. Adjudication of individual class member's claims with respect to POSHMARK would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: TCPA VIOLATION

**(On Behalf of the Entire Plaintiff Class)**

46. Plaintiffs reallege all paragraphs above and incorporate them herein by reference.

COMPLAINT

47. Plaintiffs are bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. § 227 and 47 C.F.R. § 64.1200-"TCPA").

48. Subdivision (b)(1)(A)(iii) of section 227 of Title 47 of the United States Code makes it unlawful for any person to "Make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice...to any telephone number assigned to a paging service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."

49. Both the FCC and the Ninth Circuit Court of Appeal have defined a text message as a call to a wireless number for the purposes of this subdivision. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-4 (9th Cir. 2009); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Red. 14014, 14115 (July 3, 2003).

50. Plaintiffs allege on information and belief that software internal to POSHMARK's website/app obtains and records the numbers in users' Contacts lists then transmits text messages to each of those users via a connection to the Public Switched Telephone Network ("PSTN") or via an Internet Protocol ("IP") interface with the PSTN, in either event dialing without the intervention of human agency.

51.     Regarding consent, the FCC has ruled that "a consumer's prior express consent may be obtained through and conveyed by an intermediary." *In The Matter Of GroupMe, Inc./Skype Communications S.A.R.L Petition For Expedited Declaratory Ruling In Re Rules And Regulations Implementing The Telephone Consumer Protection Act Of 1991*, Declaratory Ruling, 29 FCC Rcd. 3442, 3444, at ¶ 6 (March 27, 2014).  The same order stressed that, "a caller remains liable for TCPA violations when it relies upon the assertion of an intermediary that the consumer has given such prior express consent." *Id*. at 3445, at ¶ 14.  And that "the intermediary may only convey consent that has actually been provided by the consumer; the intermediary cannot provide consent on behalf of the consumer." *Id*.

52.     Speaking directly on point to the conduct at issue in this case, the FCC recently ordered the following: "We clarify that the fact that a consumer's wireless number is in the contact list on another person's wireless phone, standing alone, does not demonstrate consent to autodialed or prerecorded calls, including texts." Declaratory Ruling and Order In The Matter Of Rules And Regulations Implementing The Telephone Consumer Protection Act Of 1991, 30 FCC Rcd.  7961, 7989 at ¶ 47 (July 10, 2015) ("*2015 Omnibus Order*").

53.     The *2015 Omnibus Order* addressed the exact same sending of text messages to every number in a website user's Contacts list as POSHMARK did here.

COMPLAINT

54. Defendants have been calling Plaintiffs' numbers assigned to a wireless service, using an automatic telephone dialing system or an artificial or prerecorded voice, without Plaintiffs' express permission on multiple occasions during the statutory period of the last four (4) years, pursuant to 28 U.S.C. section 1658. These calls were not made for any emergency purpose, nor were these calls exempt under subdivision (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

55. Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of 47 U.S.C. section 227 (b)(1)(A)(iii). Plaintiffs may recover injunctive relief as well as actual damages or $500.00 (Five Hundred Dollars) per violation, whichever is greater. If the court finds that Defendant's violations were willful or knowing, it may, in its discretion, award up to three (3) times that amount.

## SECOND CAUSE OF ACTION:
## UNFAIR BUSINESS PRACTICES ACT
### (On Behalf of the Entire Plaintiff Class)

56. Plaintiffs reallege all paragraphs above and incorporate them herein by reference.

57. Because these telephone calls violate federal statutes, they are unlawful business practices within the meaning of section 17200 of the California Business and Professions Code.

58. Plaintiffs pay for text message service on their mobile phones,

COMPLAINT

either by the individual text or by volume of a certain preset number of text messages per month with individual charges if they go over.

59.     POSHMARK's unsolicited text advertising uses the paid for and economically valuable text message allotments.

60.     Some Plaintiffs may pay for "unlimited" text messaging, but they still pay for this allotment and Defendant's uninvited use of it constitutes unauthorized use and taking of a valuable service.

61.     Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of POSHMARK's actions as set forth herein.

62.     POSHMARK's actions as alleged in this complaint constitute an unfair or deceptive business practice within the meaning of California Business and Professions Code section 17200 in that POSHMARK's actions are unfair, unlawful, and fraudulent.

63.     POSHMARK's business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that POSHMARK is using an illegal and proscribed form of advertising that Congress made illegal precisely because of the mass annoyance it causes and the unfair cost shifting of the advertising from the advertiser to the unwilling recipient.

64.     POSHMARK's business practices as alleged herein are unlawful because the conduct constitutes a violation of federal statutes and

COMPLAINT

regulations, namely the TCPA.

65. POSHMARK's wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since POSHMARK is advertising its services and its users products in an illegal manner.

66. POSHMARK has reaped substantial profit by sending unlawful text message advertisements in order to make itself millions of dollars to the detriment of the victims of this illegal text message advertising. Ultimately, this has resulted in POSHMARK's wrongful receipt of profits and injury to Plaintiffs and the Class. POSHMARK has benefited from the receipt of such money that it would not have received but for its transmission of illegal text messages.

67. Section 17203 of the Business and Professions Code entitles Plaintiff to an injunction enjoining defendants from engaging in unfair or unlawful business practices.

WHEREFORE Plaintiffs pray for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. section 227;
2. For an award of $1,500.00 for each such violation found to have been willful;
3. For injunctive relief;

COMPLAINT

On the SECOND CAUSE OF ACTION:

4. For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in unfair or unlawful business practices pursuant to section 17203 of the California Business and Professions Code;

5. For disgorgement of any unlawfully obtained profits;

6. For compensatory damages according to proof;

On ALL CAUSES OF ACTION:

7. For attorney's fees pursuant to all applicable federal and state statutes including without limitation California Code of Civil Procedure section 1021.5;

8. For costs of suit herein incurred; and

9. For such further relief as the Court deems proper.


Dated:   September 19, 2016         Respectfully submitted,
                                    Law Offices of David C. Beavans, APC

                                      /s/ David C. Beavans
                                    David C. Beavans, Esq.

                                    Attorney for Christopher J. Reichman, individually and on Behalf of All Others Similarly Situated
                                    Email: dbeavans@thesdlawyers.com

COMPLAINT