UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. REICHMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>POSHMARK, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 16-cv-2359 DMS (JLB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR EARLY SUMMARY JUDGMENT** |

This case comes before the Court on Defendant Poshmark, Inc.'s motion for early summary judgment pursuant to Federal Rule of Civil Procedure 56. The motion came on for hearing on May 5, 2017. David C. Beavans appeared for Plaintiff, and Laura Alexandra Stoll appeared for Defendant. After considering the parties' briefs, oral argument, the relevant legal authority, and the record, Defendant's motion is granted.

/ / /

/ / /

/ / /

/ / /

# I.
# BACKGROUND

This lawsuit arises out of Plaintiff Christopher J. Reichman's receipt of two text messages containing an invitation to register with Poshmark. Defendant Psohmark operates a mobile application ("app") that provides users with a platform to sell and purchase used clothing and accessories. (First Amended Complaint ("FAC") ¶¶ 7–9.) Users can use the app to list their goods for sale by creating an online "closet" and uploading pictures of the items from their mobile devices. (*Id.* ¶¶ 7, 10–11.) Users can also purchase goods from other users' closets on their mobile devices by using the app. (*Id.*) Like many other apps, Defendant's app allows users to invite their "contacts" to join Poshmark by text message or other means.[1]

Plaintiff's former client, Tricia Tolentino, is a registered user on Poshmark, with over 14,000 users "following" her closet. (Declaration of John McDonald ("McDonald Decl.") ¶¶ 20, 28.) On January 18, 2015, Ms. Tolentino accessed the app and listed several clothing items for sale. (*Id.* ¶ 21.) Afterwards, she navigated to the "Find People" page, which provided her with three options to find her contacts: (1) from her contact list stored on her mobile device, (2) from her Facebook account, and (3) from her Twitter account. (*Id.* ¶¶ 8, 22.) Ms. Tolentino selected the first option.[2] (*Id.* ¶ 22.) She was then brought to a screen displaying a list of her contacts, including those who have yet to register with Poshmark. (*Id.* ¶¶ 14, 22.) Displayed below each of those contact's name was his or her phone number or e-mail address.[3]

---

[1] Contacts include individuals in the users' list of contacts on their phone or those connected to users on social media, such as Facebook and Twitter.

[2] Ms. Tolentino previously granted Defendant permission to access her contact list. (McDonald Decl. ¶ 12 n.4.)

[3] Whether an e-mail address or a phone number was displayed depended upon the method of contact saved in Ms. Tolentino's contact list for each individual. (McDonald Decl. ¶ 14.)

(*Id.* ¶ 14.) On this screen, Ms. Tolentino was provided with two options to invite her contacts to join Poshmark: (1) selecting the "Invite All" button to send an invite to everyone in her contact list, or (2) individually selecting an invitation button next to each contact's name. (*Id.* ¶ 15.) Ms. Tolentino chose to send an invitation to all of her contacts by selecting the "Invite All" button. (*Id.* ¶¶ 15, 22.) As a result, invitational messages were sent to the invitees according to the contact method displayed under their names.[4] (*Id.* ¶¶ 16, 22.) Because Ms. Tolentino had saved Plaintiff's phone number in her contact list, Plaintiff received a text message, which contained an invitation "to view and buy the wares now being sold through POSHMARK" and a link to Ms. Tolentino's closet.[5] (FAC ¶ 14; Declaration of Christopher J. Reichman ("Reichman Decl.") ¶ 3.) On January 25, 2015, Ms. Tolentino again access the app and selected the "Invite All" button, which caused Plaintiff to receive another text message. (Reichman Decl. ¶ 5.)

Based on the receipt of two text messages, Plaintiff alleges Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff seeks to represent a class of "[a]ll persons and entities located within the United States of America to whose mobile phones POSHMARK and/or its agents transmitted a text message without prior express written consent anytime from September 15, 2012, to the present." (FAC ¶¶ 6, 36.) Defendant now moves for summary judgment, arguing Plaintiff cannot establish a violation of § 227(b)(1)(A)(iii) because Defendant did not "make" the invitational text message.

///

---

[4] Within minutes of sending the invitational messages, two of Ms. Tolentino's contacts accepted her invitation and joined Poshmark. (McDonald Decl. ¶ 22.) Each time Ms. Tolentino received a notice that her contacts had joined Poshmark, she "followed" them on the app. (*Id.*)

[5] In addition to the invitational messages sent on January 18 and 25, 2015, Ms. Tolentino sent invitational messages to 110 individually selected contacts on January 19, 2015 and to one contact on May 8, 2015. (McDonald Decl. ¶¶ 24, 29.)

## II.

## DISCUSSION

**A.     Legal Standard**

Summary judgment is appropriate if "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.*; *see also Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.     TCPA Claim**

Defendant contends it cannot be liable under the TCPA because Plaintiff cannot establish it made the calls, i.e., that Defendant sent the challenged text

messages. The TCPA makes it unlawful "to make any call (other than a call ... made with the prior express consent of the called party) using any automatic telephone dialing system ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). A text message is a "call" within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). The TCPA, however, does not define the term "to make any call[.]"

Congress has delegated to the Federal Communications Commission ("FCC") the authority to make rules and regulations to implement the TCPA. *Satterfield*, 569 F.3d at 953 (citing 47 U.S.C. § 227(b)(2)). Pursuant to this authority, the FCC issued a Declaratory Ruling and Order, providing guidance for determining who makes or initiates a call, in light of the "changes in calling technology." *See* In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7978–84 (2015) ("FCC Order"). In determining whether an app or its user is the maker of a call, the FCC explained that it looks to "the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." *Id.* at 7980. Because the TCPA does not define the term "to make any call" and the FCC's interpretation of the TCPA is reasonable, the Court uses the FCC Order to inform its analysis. *See Satterfield*, 569 F.3d at 953; *see also Van Patten v. Vertical Fitness Grp.*, LLC, 847 F.3d 1037, 1048 (9th Cir. 2017) (finding reasonable the FCC's interpretation of the TCPA in the 2015 FCC Order).

Of particular relevance to this case, the FCC determined whether two app providers, Glide and TextMe, "make" calls for purposes of the TCPA. The FCC used Glide to illustrate when an app provider is a maker of a call. Glide was a video messaging service that automatically sent "invitational texts of its own choosing to every contact in the app user's contact list" unless the user affirmatively opted out.

FCC Order at 7982–83. The FCC found "the app user plays no discernible role in deciding whether to send the invitational text messages, to whom to send them, or what to say in them." *Id*. at 7983. Given these facts, the FCC concluded "Glide makes or initiates the invitational text messages by taking the steps physically necessary to send each invitational text message or, at a minimum, is so involved in doing so as to be deemed to have made or initiated them." *Id*.

In contrast, the FCC reached the opposite conclusion with TextMe. Unlike Glide, users had to take several affirmative steps for TextMe to send invitational text messages. Users had to "(1) tap a button that reads 'invite your friends'; (2) choose whether to 'invite all their friends or [] individually select contacts'; and (3) choose to send the invitational text message by selecting another button." FCC Order at 7983–84. Although the FCC expressed concern that TextMe controlled the content of the messages, the affirmative choices by users led the FCC to conclude the user, not TextMe, was the maker of the text message. *Id.* at 7984. The FCC reasoned "the app user's actions and choices effectively program the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call." *Id*.

Defendant argues its app functions just like TextMe, and therefore, Ms. Tolentino made the calls within the meaning of the TCPA. In support, Defendant has offered evidence that, as was the case with TextMe, it requires users to take affirmative steps to determine whether to invite a contact, to whom to send an invitational message, and when that invitational message is sent. For example, Ms. Tolentino caused a text message to be sent to Plaintiff by (1) granting the app permission to access her contact list, (2) tapping on the "Find People" button, (3) choosing the "Find friends from your contacts" option, (4) determining whether to invite all her contacts or select contacts, and (5) choosing to send the invitational message by selecting the "Invite All" button. Based on these affirmative steps, it is apparent Ms. Tolentino, not Defendant, took the action necessary to send the text

messages. Had Ms. Tolentino decided not to take any of these steps, a text message would not have been sent to Plaintiff.

Plaintiff has not offered any evidence in dispute, and in fact, does not appear to dispute Defendant's showing as to the affirmative steps users must take to cause invitational messages to be sent. Rather, Plaintiff argues there are genuine issues of material fact that preclude summary judgment, such as whether Defendant adequately informed its users of the method in which invitational messages will be sent. Defendant, however, has offered evidence demonstrating that the app indicates to users whether invitees will receive the invitational message by text or e-mail. Under each contact's name, either a telephone number or an e-mail address appears based on the method of contact saved in the user's contact list. As a result, it is apparent to users that if they decide to invite a contact whose telephone number appears, then an invitation will be sent by text message rather than by e-mail. In any event, whether Defendant informed its users regarding the method of invitation (text or e-mail) is not material to determining who "makes" a call under the TCPA. "The goal of the TCPA is to prevent invasion of privacy, and the person who chooses to send an unwanted invitation is responsible for invading the recipient's privacy even if that person does not know how the invitation will be sent." *Cour v. Life360, Inc.*, No. 16-CV-00805-TEH, 2016 WL 4039279, at *4 (N.D. Cal. July 28, 2016) (internal citation omitted).

Plaintiff further argues summary judgment is not appropriate because whether Defendant "had 'knowledge' that Tolentino was violating the TCPA" is a genuine issue of material fact that "can only be determined by [the] finder of fact." (Mem. of P. & A. in Opp'n to Mot. at 22.) In support, Plaintiff relies on a portion of the FCC Order stating, "whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes may also be a factor in determining whether the platform provider is so involved in placing the calls as to be deemed to have initiated them." FCC Order at

7980–81. The FCC explained this factor applies when a platform provider is notified "that its service is being used unlawfully by its clients and … then allows such usage to continue after this warning." *Id.* at 7981 n.110. In such a situation, the Court considers "the fact that the platform provider allowed such usage to continue after having actual notice of the unlawful activity to be a possible indicator that the platform provider is actively participating in the making or initiating of the calls at issue." *Id.* Here, however, the undisputed record demonstrates the platform designed by Defendant requires the user to navigate a number of prompts to "effectively program the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call." FCC Order at 7984. Plaintiff's conclusory allegations to the contrary are therefore insufficient to establish a genuine issue of material fact.

Based on the undisputed record, the Court finds that Ms. Tolentino, not Defendant, made the calls within the meaning of the TCPA. Defendant's motion for summary judgment is therefore granted.

**C.    Rule 56(d) Request**

Federal Rule of Civil Procedure 56(d) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (citation omitted). If a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). To satisfy Rule 56(d), the requesting party "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525

F.3d 822, 827 (9th Cir. 2008) (citing *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)); *see Garrett v. City and Cty. of S.F.*, 818 F.2d 1515, 1518 (9th Cir. 1987) ("a party opposing summary judgment must make clear 'what information is sought and how it would preclude summary judgment.'") (quoting *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998)). "Failure to comply with these requirements 'is a proper ground for denying discovery and proceeding to summary judgment.'" *Family Home & Fin. Ctr., Inc.*, 525 F.3d at 827 (quoting *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)).

Initially, Plaintiff argues his Rule 56(d) request should be granted because the pending motion was brought before he had a "'realistic opportunity' to conduct discovery." (Mem. of P. & A. in Opp'n to Mot. at 12–13.) In support, Plaintiff relies on *Burlington*, where the Ninth Circuit found the district court abused its discretion by granting the plaintiff's motion for summary judgment without first allowing the defendant to conduct discovery under Rule 56(d). 323 F.3d at 774–75. The plaintiff in *Burlington* filed suit and moved for summary judgment less than one month after filing suit, before any discovery was conducted. *Id.* at 773. Unlike in *Burlington*, Defendant brought the pending motion approximately six months after the filing of the Complaint. Moreover, Plaintiff was afforded adequate opportunity to develop discovery to oppose the instant motion. Indeed, Magistrate Judge Burkhart actively managed discovery pertaining to the "maker" issue after Defendant's motion to dismiss was denied and before it was permitted to file the present motion. Therefore, Plaintiff's reliance on *Burlington* is misplaced.

In the declaration filed in support of opposing the motion, Plaintiff contends he believes there remains undiscovered facts that are essential to the oppose summary judgment, which include the following: (1) ownership of the telephone numbers (650) 241-4364 and (650) 249-4822, which transmitted the invitational text messages to Plaintiff, (2) documents showing "Defendant has knowledge that the texts transmitted through their application were in fact unlawful violations of the

1  TCPA and the Defendant continued to transmit these text messages or allow the text
2  messages to be transmitted[,]" (3) documents showing "Defendant willfully did not
3  inform any of its users that the user could be violating the TCPA by sending
4  invitations to friends[,]" (4) documents showing "the level of involvement of
5  Twilio[, a third party,] in transmitting spamvite text messages[,]" (5)
6  "documentation of the phone call between representatives of Defendant and Ms.
7  Tolentino[,]" (6) documents showing "what happens when a client of Defendant uses
8  the 'Invite All' button[,]" (7) documentation showing "how the selection of an email
9  or phone number being placed under a contract's name in the app is conducted[,]"
10 and (8) "a log of what information and documents they are withholding based on
11 confidentiality of third party information and of their proprietary information."
12 (Declaration of David Beavans ¶¶ 41–50, 53–57, 59–62, 64–70.)

The declaration, however, does not satisfy Rule 56(d). Plaintiff does not explain whether the information sought exists, but merely speculates as to its existence. Even if the requested information exists, Plaintiff fails to demonstrate how additional discovery would uncover facts necessary to defeat the motion. As Plaintiff acknowledges, the only issue in the present motion is whether Defendant made the calls within the meaning of the TCPA. Plaintiff fails to show how the requested information is necessary to determine the extent of the app user's involvement in sending text messages. Because Plaintiff has not met his burden, he is not entitled to a continuance to conduct additional discovery under Rule 56(d).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# III.
# CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: May 15, 2017

Hon. Dana M. Sabraw
United States District Judge